# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

Eugene Foster

     Plaintiff/Appellant

v.

Mountain Coal Company, LLC

Arch Western Resources, LLC

Arch Coal, Inc.

     Defendants/Appellees

Case No. 15-1025

_____

On Appeal from the United Stated District Court from the District of Colorado
The Honorable Judge Babcock
Case Number 12-cv-03341-LTB-MJW
_____

## APPELLANT'S REPLY BRIEF
_____

J. Keith Killian
Damon J. Davis
Killian Davis Richter & Mayle, P.C.
202 North 7th Street
Grand Junction, CO 81501
(970) 241-0707
damon@killianlaw.com
Attorneys for Eugene Foster


June 25, 2015

i

# TABLE OF CONTENTS

Table of Authorities……………………………………………………….. iv

I.  Foster May Use Circumstantial Evidence To Rebut Direct Evidence And His Own Testimony To Contradict Mountain Coal's Testimony.. 1

II.  Foster's April 3 Request for Accommodation Was Sufficiently Direct and Specific To Constitute A Protected Activity……………... 3

   A.  Foster's Testimony Regarding the April 3 Conversation is Admissible and Its Weight is for the Jury to Decide…………… 3

   B.  Foster Correctly Described the District Court's Summary Judgment Ruling…………………………………………... 4

   C.  Foster Adequately Communicated His Desire for Assistance to Continue Working with His Disability………………………… 5

      1.  An employee need not identify and specific form or type of accommodation in the initial request for accommodation…………………………………….. 5

      2.  Foster's request for accommodation was sufficiently direct and specific to constitute a protected activity……... 9

III.  There Is a Question of Fact as to Whether Foster's April 11 Request Was A Timely Request for Accommodation………………… 14

   A.  There is an Inference that Foster was Not Fired until April 11… 14

   B.  It can be inferred that Mountain Coal Knew of Foster's April 11 Request for Accommodation Before it Terminated Him……….. 19

IV.  The Circumstantial Evidence Establishes Causation and Pretext……… 23

A.    Foster Has Demonstrated Causation for Purposes of the Prima
      Facie Case…………………………………………………… 23

B.    Mountain Coal Did Not Follow Previously Contemplated Lines
      Because Its Termination of Foster was for Different Reasons
      than His Suspension…………………………………………… 25

C.    Foster Presented Evidence that the Reason Given for His
      Termination is Pretextual, Creating a Question of Fact on
      Causation………………………………………………….. 27

      1.    Foster preserved all his arguments but one……………… 27

      2.    In the light most favorable to Foster, the evidence
            demonstrates pretext…………………………………… 29

CONCLUSION………………………………………………………… 32

# TABLE OF AUTHORITIES

<u>Table of Cases</u>

*Adams v. Montgomery*, 569 F. App'x 769
(11th Cir. 2014) (unpublished)…………………………………………….. 23

*Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159 (10th Cir. 1998)…….............. 1

*Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130
 (7th Cir. 1996)………………………………………………………... 8

*Brown v. Brennan*, 2015 WL 2452751
(D. S.C. May 21, 2015) (unpublished)……………………………………. 24

*Camfield v. Oklahoma City*, 248 F.3d 1214
(10th Cir. 2001)…………………………………………………… 18-19

*Cisneros v. Wilson*, 226 F.3d 1113 (10th Cir. 2000)……………………… 16-17

*Commonwealth v. Fulmore*, 25 A.3d 340 (Penn. Super. 2011)……………… 3

*Conner v. Schnuck Markets, Inc.*, 121 F.3d 1290
 (10th Cir. 1997)……………………………………………………… 27

*David & Thomas v. Texaco, Inc.*, 2005 WL 2001937
(Cal. Ct. App. Aug. 19, 2005) (unpublished)……………………………. 21-22

*DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111
(2d Cir. 1987)……………………………………………………… 4

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)…………………………. 1

*EEOC v. C.R. England, Inc.*, 644 F.3d 1028 (10th Cir. 2011)………………. 6

*EEOC v. Prod. Fabricators, Inc.* 763 F.3d 963 (8th Cir. 2014)……………... 11

*Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91
(1st Cir. 2007)…………………………………………………….. 10-11

*Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322
(9th Cir. 2000)…………………………………………………… 17

*Guessous v. Fairview Prop. Investments, LLC*, 2014 WL 7238993
(E.D. Va. Dec. 16, 2014) (unpublished)………………………….. 23-24

*Haynes v. Williams*, 88 F.3d 898 (10th Cir. 1996)…………………………. 31

*Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685
(7th Cir. 1998)…………………………………………………... 6

*Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255
(10th Cir. 2009)………………………………………………… 19

*Hysten v. Burlington N&S.F. R. Co.*, 44 F. App'x 411
(10th Cir. 2002) (unpublished)…………………………………….. 31

*In re Loper*, 329 B.R. 704 (10th Cir. 2005)………………………………... 2

*Judge v. Landscape Forms, Inc.*, 592 F. App'x 403
(6th Cir. 2014)………………………………………………... 12

*Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534
(D. Md. 2007)…………………………………………………… 30

*Lowe v. Indep. Sch. Dist. No. 1 of Logan Cnty.*, 363 F. App'x 548
(10th Cir. 2010) (unpublished)……………………………………….. 8

*Luke v. Hosp. Shared Servs., Inc.*, 513 F. App'x 763
(10th Cir. 2013) (unpublished)…………………………………….. 20

*Morris v. Travelers Indem. Co. of Am.*, 518 F.3d 755
(10th Cir. 2008)…………………………………………………….. 18

*Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495 (9th Cir. 2015)………………... 2

v

*Nixon v. Denver*, 84 F.3d 1364 (10th Cir. 2015)…………………………. 26-27

*O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248
(10th Cir. 2001)…………………………………………………………... 25, 31

*Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098 (10th Cir. 1998)…………….. 31

*Robertson v. Las Animas Cnty. Sheriff's Dept.*, 500 F.3d 1185
(10th Cir. 2007)………………………………………………………… 6

*Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46
(1st Cir. 2000)…………………………………………………………… 2

*Schlecht v. Lockheed Martin Corp.*, 2014 WL 4819006
(D. Colo. Sept. 29, 2014) (unpublished)………………………………... 13

*Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999)………………. 6

*State v. Hershey*, 826 A.2d 1183 (Conn. App. 2003)………………………… 3

*Tapia v. Tansy*, 926 F.2d 1554 (10th Cir. 1991)………………………… 14-15

*Taylor v. Peninsula Reg'l Med. Ctr.*, 3 F. Supp. 3d 462
(D. Md. 2014)………………………………………………………….... 23

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3rd Cir. 1999)………….. 6, 7

*Travis v. Commonwealth*, 457 S.W.2d 481 (Ky. App. 1970)………………... 3

*United States v. Oldbear*, 568 F.3d 814, 818-819
(10th Cir. 2009)………………………………………………………… 18

*U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711
(1983)…………………………………………………………………… 1

*Wells v. Colorado Dept. of Transp.*, 325 F.3d 1205
(10th Cir. 2003)……………………………………………….. 1, 24-25, 27

*Williams v. Shields*, 77 F. App'x 501, 503
(10th Cir. 2003) (unpublished)……………………………………………….. 2

*Wittmer v. Peters*, 87 F.3d 916 (7th Cir. 1996)………………………………… 4

*Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834 (2d Cir. 2013)…………. 23, 24


Table of Other Authorities

2. J.Wigmore, Evidence in Trials at Common Law
§ 273(1) at 115, § 173 at 1840 (J Chadbourn rev. 1979)…………………….. 22

Enforcement Guidance: Reasonable Accommodation
and Undue Hardship Under the Americans with Disabilities Act………. 7, 8, 12

F.R.E. 406……………………………………………………………………... 17, 18

F.R.E. 602………………………………………………………………………. 18

Random House Webster's Dictionary, p.617 (4th Ed. Rev. 2001)…………….... 15

I.   **FOSTER MAY USE CIRCUMSTANTIAL EVIDENCE TO REBUT DIRECT EVIDENCE AND HIS OWN TESTIMONY TO CONTRADICT MOUNTAIN COAL'S[1] TESTIMONY**

Foster may prove his case entirely through circumstantial evidence. *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983). Circumstantial evidence may be used to contradict direct evidence, because "the law makes no distinction between the weight or value to be given to either…." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-100 (2003). "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Id*. at 100. Foster may contradict the direct evidence of Mountain Coal, even its managers' testimony, with circumstantial evidence.

Additionally, circumstantial evidence is not to be viewed in a piecemeal fashion, but instead is to be viewed as a whole. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1174 (10th Cir. 1998). Even if no one piece of evidence is determinative, if the evidence collectively raises a question of fact, then summary judgment is inappropriate. *Id*. Further, one piece of evidence may be used to prove multiple elements. For example, evidence of pretext may also be used to support the prima facie element of causation. *Wells v. Colorado Dept. of Transp.*, 325 F.3d 1205, 1217-1218 (10th Cir. 2003).

---

[1] Foster will continue to refer to the three defendants collectively as Mountain Coal.

Finally, Foster can rely on his own self-serving testimony to defeat summary judgment. *Williams v. Shields*, 77 F. App'x 501, 503 (10th Cir. 2003) (unpublished).  An "uncorroborated and self-serving" affidavit is sufficient to defeat summary judgment if it sets forth specific facts of which the affiant has personal knowledge, such as the contents of a conversation in which the affiant participated. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015). "[A] 'party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment.'" *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir. 2000).

These statements are consistent with Tenth Circuit rulings.  As the Bankruptcy Appeals Panel recognized, the rule against self-serving affidavits only applies if the affidavit is conclusory or speculative; not when it is specific and based on personal knowledge. *In re Loper*, 329 B.R. 704, 709 (10th Cir. 2005). And this Court stated that an affidavit setting forth admissible facts within the knowledge of the affiant "is legally competent to oppose summary judgment, notwithstanding its inherently self-serving nature." *Williams*, 77 F. App'x at 503.

Foster's "self-serving" statements were specific and based on personal knowledge, especially Foster's recounting of conversations with Mountain Coal's

management.  Thus, Foster may rely on his own testimony and self-serving statements to defeat Mountain Coal's motion for summary judgment.

## II.  FOSTER'S APRIL 3 REQUEST FOR ACCOMMODATION WAS SUFFICIENTLY DIRECT AND SPECIFIC TO CONSTITUTE A PROTECTED ACTIVITY

Foster raised a genuine issue of fact regarding whether he adequately requested an accommodation on April 3, 2008.  Mountain Coal does not dispute that Foster made it aware of his neck injury and that his request was in relation to his neck injury, so the only question is whether his request for accommodation was adequate.

### A.  Foster's Testimony Regarding the April 3 Conversation is Admissible and Its Weight is for the Jury to Decide

Mountain Coal attacks Foster's testimony regarding the April 3 conversation and his request for accommodation because Foster took medications prior to giving the testimony.  But this argument goes to the weight of his testimony and is properly made to a jury, in a summary judgment motion.

Mountain Coal does not dispute the authority cited by Foster that a witness's medication use goes to the weight of their testimony, not its admissibility.  Other authorities reach the same conclusion. *See Travis v. Commonwealth*, 457 S.W.2d 481, 482 (Ky. App. 1970), *State v. Hershey*, 826 A.2d 1183, 1191-92 (Conn. App. 2003), *and Commonwealth v. Fulmore*, 25 A.3d 340, 348 (Penn. Super. 2011).

Since the Court is not to assess credibility in ruling on summary judgment, Foster's

testimony is to be accepted as true for purposes of this appeal.

Mountain Coal also acknowledges it did not move to strike Foster's

testimony. Objections to the admissibility of summary judgment exhibits are

waived in the absence of an objection in the trial court." *DeCintio v. Westchester*

*Cnty. Med. Ctr.*, 821 F.2d 111, 113-14 (2d Cir. 1987), *see also Wittmer v. Peters*,

87 F.3d 916, 917 (7th Cir. 1996) (considering unsworn expert reports because there

were no objections in the trial court). Because Mountain Coal did not specifically

challenge Foster's competency and move to strike his testimony in the district

court, any objection to it is waived on appeal.

### B.      Foster Correctly Described the District Court's Summary Judgment Ruling

The district court's summary judgment order held that an adequate request

must set forth the specific reasonable accommodation that the plaintiff desires.

Aplt. App. p.1812, 1813. In describing what constitutes a "sufficiently direct and

specific request" the district court stated: "In other words, a plaintiff cannot bring a

lawsuit claiming he is qualified based on an accommodation other than the

accommodation he actual requested from his employer." Aplt. App. p.1813. It

further stated that once this appropriate request is made, then the employer has a

duty to engage in the interactive process. Aplt. App. p.1813. The district court did

not articulate a different standard for accommodation requests when addressing the retaliation claim. Aplt. App. p.1826.

Mountain Coal argues this discussion was with respect to the termination and failure to accommodate claims. To be a protected activity, however, the request for accommodation must be adequate; it too must be sufficiently direct and specific. Thus, the same standard applies. Under the district court's articulation, Foster had to request a specific, reasonable accommodation in order for his request to be a protected activity.

### C.     Foster Adequately Communicated His Desire for Assistance to Continue Working with His Disability

#### 1.     An employee need not identify and specific form or type of accommodation in the initial request for accommodation

Mountain Coal's arguments are largely off point because they confuse the requirement of ultimately identifying a reasonable accommodation for purpose of a failure to accommodate claim with the requirements of an initial request for accommodation. This is related to the district court's error in holding that the employee must request a specific, reasonable accommodation in order for the request to be adequate. Both Mountain Coal and the district court are incorrect. While the employee, with the assistance of the employer, must ultimately identify a reasonable accommodation through the interactive process, the initial request

need only inform he employer that the employee desires assistance with his disability.

The requirement for an effective request is that the employer knows of the disability and the employee's desire for assistance with that disability. *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011), *accord Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3rd Cir. 1999). Mountain Coal does not dispute knowledge of Foster's disability, so the only question is whether it knew he desired assistance.

The employee need not use "magic words" to seek an accommodation. *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999). Likewise, the employee need not identify a specific accommodation he desires. *See Robertson v. Las Animas Cnty. Sheriff's Dept.*, 500 F.3d 1185, 1198 (10th Cir. 2007) (decided under Title II of the ADA). The request, "Have you found some work for me to do?" is adequate. *Midland Brake*, 180 F.3d at 1173. Likewise, the request "I want to keep working for you – do you have any suggestions?" is adequate. *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 694 (7th Cir. 1998). The initial request for accommodation need not even be reasonable, so long as it conveys a desire for assistance with a disability; because "It would make little sense to insist that the employee must have arrived at the end product of the interactive process before the

13

employer has a duty to participate in that process." *Taylor*, 184 F.3d at 315, 316, 317.

Mountain Coal asserts that these cases, and others cited in the Opening Brief, are distinguishable because they involve different types of accommodations; and different types of accommodations require different language to be sufficient. But Mountain Coal cites no support for this proposition. The assertion is illogical, because the employee need not even identify a type of accommodation, but need only ask for assistance with their disability. Once an accommodation is requested, it is the purpose of the interactive process to identify a specific, reasonable accommodation. Even if an initial request is general or unreasonable, the interactive process is used to develop a specific, reasonable accommodation. Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, No.5.[2] To obtain an accommodation of time off from work, Foster would ultimately have to identify dates and the amount of time to be missed, but that is not required as part of the initial request.

This is why Mountain Coal's duties under the interactive process are relevant. These duties illustrate why Foster was not required to ask for a specific,

---

[2]The Enforcement Guidance available online is not paginated, but consists of number paragraphs, which Foster references to provide the Court with pinpoint cites.

reasonable accommodation in his initial request. The employer has a duty to assist in identifying a reasonable accommodation for the employee. *Lowe v. Indep. Sch. Dist. No. 1 of Logan Cnty.*, 363 F. App'x 548, 552 (10th Cir. 2010) (unpublished); *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1134-35 (7th Cir. 1996). The interactive process is to "identify the appropriate reasonable accommodation." Enforcement Guidance, No. 5. Further, the employer need not grant the accommodation the employee requested if another will also be effective. Enforcement Guidance, No. 9. This includes requests for time off; if another accommodation is available the employer may use it to keep the employee on the job. Enforcement Guidance, No. 20. Because the employer must assist in identifying a specific reasonable accommodation, the employee need not identify such an accommodation in the initial request. The employee need only ask for some form of assistance for his disability. Thus, even if Foster's April 3 request is construed as an unreasonable request for indefinite time off, it is a valid request because the purpose of the interactive process is to whittle this down to a reasonable accommodation.

Although Foster was required to ask for an accommodation, he was not required to ask for the specific accommodation, or even type of accommodation, he desired. Nor was he required to reach the end result of the interactive process

15

by identifying specific dates and reasonable amounts of time off he needed. Instead, he was only required to request assistance with regard to his disability, which he did.

> **2.** **Foster's request for accommodation was sufficiently direct and specific to constitute a protected activity**

There is a question of fact whether Foster adequately requested an accommodation by informing Mountain Coal of his need for time off for surgery and by requesting cooperation.  Foster stated to Mountain Coal Managers that "I've got retraining this week," which he clarified was the next day, and that he was "going to see the doctor and schedule surgery…on Friday," which was also the next day.[3] Aplt. App. p.421 (p.110:7-25).  Foster then told them "I need to get these took care of." Aplt. App. p.421 (p.110:7-10).  Foster also testified that, "All I asked was a little cooperation." Aplt. App. p.421(p.111:1).  Taken in the light most favorable to Foster, this means he actually asked Mountain Coal's manager for "a little cooperation."

Foster made known his desire to continue working by referencing the retraining he needed to take care of. Aplt. App. p.421 (p.111:1-10).  Foster also indicated he was seeking assistance.  Foster informed Mountain Coal that he was meeting with his doctor to schedule surgery; and the appointment was the same

---

[3] April 3, 2008, was a Thursday.

day he was scheduled to have retraining. Not only did he need time on Friday for his appointment, but scheduling surgery would also entail time off or reassignment, which was apparent from Foster' prior history with Mountain Coal. That Foster never scheduled the surgery bore upon his failure to accommodate claim, but does not vitiate the initial request for accommodation as a protected activity. Finally, if Foster did say the words "I'm asking for a little cooperation," which must be assumed for purposes of summary judgment, it further confirms that Foster sought assistance for his disability. Since Foster made clear he wished to keep his job despite his neck injury, and was seeking assistance with that, he adequately made an initial request for accommodation, which is a protected activity.

The *Freadman* case relied on by Mountain Coal actually supports Foster's position. There, the plaintiff told her manager on June 2 "that she 'needed to take some time off because [she was] starting not to feel well' and that 'some of [her] symptoms may be returning.'" *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 102 (1st Cir. 2007). The First Circuit construed this as an adequate request for accommodation because her manager was aware of the medical condition to which she was referring. *Id.* at 103. But the employer granted "a reasonable accommodation" by suggesting plaintiff take time off after a presentation she was to give on June 9, a week later. *Id.* at 104. The manager's

suggestion also constituted engaging in an informal interactive process. *Id*.  After receiving this suggestion, plaintiff never clarified that she needed the time off prior to June 9. *Id*. at 103-104.  Since plaintiff, despite having the chance, was not more specific about the accommodation she needed, she could not complain about the accommodation she received. *Id*. at 103-104.

As in *Freadman*, Mountain Coal was aware of Foster's neck injury and his potential need for surgery. Aplt. App. p.412 (p.74:2-p.75:21), p.1304.  Foster indicated that he needed time off by stating he had a doctor's appointment to schedule surgery.  And he asked for cooperation.  This is as specific as the *Freadman* plaintiff's statement that she needed to take some time off.  But unlike *Freadman*, Mountain Coal never engaged in the interactive process and never gave Foster a chance to be more specific.  There is a question of fact whether Foster's April 3 statements were an adequate request for accommodation, making them a protected activity.

Mountain Coal cites *E.E.O.C. v. Prod. Fabricators, Inc.* in support of its position. 763 F.3d 963 (8th Cir. 2014).  The Eighth Circuit did not explain why it found the plaintiff's request insufficient, although it may have been because he was only going to "discuss surgery" with his doctor, and when the employer followed up the plaintiff said he was "ok" or "fine." *Id*. at 968.  To the extent the Eighth

18

Circuit held that the plaintiff had to request a specific accommodation, it is contrary to cases from this circuit as well as the Second, Third, and Seventh circuits, as cited in the Opening Brief.

Further, a requirement that a specific time-off request is required would make little policy sense, especially in light of the interactive process. Employers are best served through advance notice that the employee needs time off. Assuming the need for surgery is not immediate, the employer can assist in determining the best time to take off. And the employer can determine whether another accommodation might be used to lessen the amount of time taken off. Enforcement Guidance, No. 20. The rule proposed by Mountain Coal would deprive conscientious employees of protection while reducing employer input into the available accommodation, both in contravention of the ADA's policy goals.

Mountain Coal also cites *Judge v. Landscape Forms, Inc.*, 592 F. App'x 403 (6th Cir. 2014). But *Judge* does not support its position. In *Judge*, the plaintiff requested, and was granted, time off for surgery through August 10. *Id*. at 405. After a series of exchanges, the employer extended the leave into September. *Id*. In September, plaintiff indicated he needed additional leave, but did not specify how much. *Id*. Employer then terminated plaintiff. *Id*. Only then did plaintiff state he expected to return by November. *Id*. In *Judge* the parties were already well into

19

the interactive process as accommodations were already being granted.  At that stage, it was necessary for plaintiff to provide information allowing a reasonable accommodation to be formulated, which was not done.  This case never reached that point, because Foster was terminated without Mountain Coal ever engaging in the interactive process.

Finally, *Schlecht v. Lockheed Martin Corp.* is distinguishable from this case for the same reasons *Jones* and *C.R. England* are. 2014 WL 4819006, at *3-4 (D. Colo. Sept. 29, 2014) (unpublished).  In *Schlecht* the plaintiff did not tie her requested accommodation to her disability. *Id*.  And plaintiff's off-hand reference to surgery in her e-mail had no connection to her known disabilities of attention deficit and anxiety disorder. *Id*.  Here, Foster's need for surgery was clearly tied to his disabling neck injury.

Foster told Mountain Coal that he was meeting with his doctor to schedule surgery and he asked for cooperation.  This was sufficient to put Mountain Coal on notice that he sought assistance with his neck injury.  This raises a question of fact regarding whether Foster engaged in a protected activity.  Thus, the district court erred in granting summary judgment on this issue.

III.    **THERE IS A QUESTION OF FACT AS TO WHETHER FOSTER'S APRIL 11 REQUEST WAS A TIMELY REQUEST FOR ACCOMMODATION**

Mountain Coal does not dispute that Foster's April 11, 2008, request for accommodation was sufficiently direct and specific to constitute a protected activity.  This only leaves the question of whether it was timely, and whether the decision makers knew of the request.

A.    **There is an Inference that Foster was Not Fired until April 11**

The evidence in the light most favorable to Emmons is that he was not fired from his job until April 11, the day he made his second request for accommodation.  Foster picked up the April 11 letter from Dr. Funk at 9:30 a.m. or 10:00 a.m. and relayed it to his supervisor by telephone within a half-hour. Aplt. App. vol.5 p. 983, 986, 987 (p.305:8-21, p.308:11-23, p.309:2-4).  Foster told his supervisor, Kunde, that the letter put him on disability leave and excused his days off. Aplt. App. vol.5 p.991(p.313:3-10).

Mountain Coal's attempts to discredit Foster's testimony that he relayed the information on the morning of April 11 only go to weight.  With regard to Foster's inconsistent statement, it was in response to a leading question regarding an e-mail by another person; and any inconsistency in testimony raises a jury question as to which version is correct. Aplt. App. p.145 (p.186:8-20); *Tapia v. Tansy*, 926 F.2d

21

1554, 1563 (10th Cir. 1991).   Kunde's alleged contemporaneous e-mail is

inadmissible hearsay to which Foster objected, and is contradicted by Foster. Aplt.

App. p.271, p.365-366.  Dr. Funk's cited testimony does not reference the time his

letter was drafted.  And Dr. Funk's office manager testified the time on the fax

machine was not always accurate. Aplt. App. p.1470 (p.16:16-20).  The evidence

in the light most favorable to Foster shows he relayed the information in the letter

to Kunde on the morning of April 11.

It is undisputed that Foster was terminated by letter dated April 11, but with

the termination "effective April 9." Aplt. App. p.230.  By definition, his

termination was retroactive.[4]  This letter, in itself, allows the inference that Foster

was terminated on April 11.  A jury can infer that because the letter was dated

April 11, that is when the decision was made, and the decision makers decided to

make it retroactive to April 9.  The letter itself makes no reference to an earlier

decision or attempts to contact Foster; it simply says Mountain Coal is

"terminating your employment effective April 9."

The absence of evidence corroborating the April 9 termination also supports

an inference that the decision to terminate Foster was made on April 11.  The only

support for the April 9 termination date is the self-serving testimony of three

---

[4] Retroactive: effective as of a past date. Random House Webster's Dictionary,
p.617 (4th Ed. Rev. 2001).

22

interested witnesses, who claim to have made their decision in secret.  On the other hand, the only objective suggestion of the decision date is the date on the termination letter: April 11, 2008.  Considering the lack of corroborating evidence does not turn the burden of proof on its head as alleged by Mountain Coal; it is simply a recognition of all the circumstances that make up the circumstantial evidence of when the decision was actually made.  The lack of corroborating evidence suggests Mountain Coal's explanation is inaccurate.  Corroborating evidence would weaken the inference that Foster was fired on April 11; and enough corroborating evidence would destroy the inference.  But the lack of corroborating evidence for an April 9 termination date strengthens the inference that the decision to terminate Foster was made on the date of his termination letter, April 11.

*Cisneros v. Wilson* is instructive on this issue. 226 F.3d 1113, 1133-34 (10th Cir. 2000).  *Cisneros* considered the suspicious circumstances surrounding plaintiff's termination and held they raised a question of fact as to whether it was retaliatory. *Id.*  In particular, the Courted considered that defendant retroactively determined plaintiff to be AWOL, and consequently denied approval for her to participate in a leave program that might have protected her job. *Id.  Cisneros* held that while defendant may have had a "legitimate reason" for its actions, a

reasonable jury could also infer it had "illegitimate reasons" for its actions. *Id.* at 1134. Likewise, a jury could determine there was a legitimate reason Mountain Coal managers fired Foster on April 9, kept it a secret, have no corroborating evidence, and did not write a termination letter until April 11; but they could also infer that the manager wrote the letter on April 11 because that is the day they decided to fire Foster.

Finally, Kunde's lack of knowledge that Foster had been terminated may be considered, and the district court erred in holding to the contrary. If nothing else, Kunde's lack of knowledge further illustrates the lack of corroborative evidence for an April 9 termination date. But it does more, because under Mountain Coal's routine practice Kunde would have known about Foster's termination. F.R.E. 406. Since Kunde did not know, there is an inference that Foster had not been fired as of the morning of April 11.

The district court did not consider this evidence, holding Foster lacked personal knowledge of Mountain Coal's routine practices. However, Foster's personal knowledge can be inferred from his experience and length of service with Mountain Coal. *Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (and cases cited therein). Foster worked for four years with Mountain Coal in two supervisory positions, although one was

temporary.  His knowledge of Mountain Coal's routine firing practices with respect to informing an employee's direct supervisor of an impending termination can be inferred.  His testimony regarding the routine practice need not be corroborated. F.R.E. 406.  And he was not required to demonstrate his personal knowledge by a preponderance of the evidence, but was merely required to introduce evidence "sufficient to support a finding that [he] has personal knowledge." F.R.E. 602.  Foster's background with Mountain Coal is sufficient to raise an inference supporting such a finding.

Further, Foster was not required to present specific examples demonstrating the existence of the routine practice; his description of the routine practice is sufficient. *Morris v. Travelers Indem. Co. of Am.*, 518 F.3d 755, 760-61 (10th Cir. 2008).  In *Morris*, an insurance agent's description of his "usual routine," without any specific examples or numbers, was sufficient to satisfy F.R.E. 406. *Id*. Likewise, Foster's description of the routine practice was sufficient.

The cases cited by Mountain Coal are both distinguishable.  In *United States v. Oldbear* the witnesses were from outside the organization, so could not say whether their experiences were routine practice or an unauthorized deviation from routine practice. 568 F.3d 814, 818-819, 422 (10th Cir. 2009).  But here, Foster was an employee of Mountain Coal, so would know the difference.  In *Camfield v.*

*Oklahoma City*, the witness police officer was engaged in the unique event of announcing the seizure of child pornography upon entering a video store, a circumstance that could not be considered routine. 248 F.3d 1214, 1232-1233 (10th Cir. 2001).  On the other hand, termination of employees is not a unique or unusual event and is often subject to routine practices.  Neither case supports the district court's determination.

The Court should consider Kunde's lack of knowledge in determining there is a question of fact on when Foster was terminated; but as set forth above, there is a question of fact even without this evidence.  That Foster was fired by a letter dated April 11, and there is no corroborating evidence for an April 9 termination, raises a question of fact that Foster was actually fired on April 11, making summary judgment improper.

**B.    It can be inferred that Mountain Coal Knew of Foster's April 11 Request for Accommodation Before it Terminated Him**

The knowledge of Mountain Coal's decision makers regarding Foster's April 11 request for accommodation can be inferred from the circumstances. *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1267 (10th Cir. 2009).  Accepting the inferences in favor of Foster, he was not fired until April 11, but his termination was made retroactive to April 9.  This raises the question of "why"?  A reasonable inference is that it was done in response to Foster's recent request for

accommodation, while avoiding the appearance of impropriety by making it appear the decision was made before his request.

Again, *Cisneros* is instructive. There may have been a legitimate reason to make Foster's termination retroactive. But it can also be inferred there was an illegitimate reason. As in *Cisneros*, this illegitimate reason may be inferred from the suspicious circumstances. This includes not only the timing of the termination, but also evidence of pretext and Mountain Coal's animus, discussed in the next section. Mountain Coal's retroactive termination of Foster and its pretextual reasons for terminating him raise an inference it knew of Foster's request for accommodation, retaliated against him, and then sought to cover it up through a retroactive termination for pretextual reasons. Mountain Coal would have no reason to engage in these actions unless it was covering up its retaliation against Foster, and it would have to have knowledge of his accommodation request to have a reason to retaliate against him.

*Hennagir* is also instructive. There, the decision maker's knowledge could be inferred because he was named in the charge and he fired the plaintiff the day after his company received the charge. 587 F.3d at 1267. Here, it can reasonably be inferred that Kunde would bump Foster's request for accommodation up the

chain to the actual decision makers. And their action of firing him the same day as

his request allows the inference they knew of the request, just as in *Hennagir*.

Mountain Coal relies on *Luke v. Hosp. Shared Servs., Inc.* a case that

rejected the inference of knowledge of protected activity based the employer

receiving written notice of the protected activity followed by rapid termination.

513 F. App'x 763, 764, 767 (10th Cir. 2013) (unpublished). *Luke* did not discuss

*Hennagir*. To the extent *Luke* in inconsistent with *Hennagir*, *Hennagir* controls

because it was decided earlier and is a published opinion, while *Luke* is not. *Luke*

is also distinguishable because there were no other suspicious circumstances, such

as a retroactive termination or pretextual reasons for termination, suggesting the

employer was covering up its guilty knowledge and conduct.

In an unpublished opinion, the California Court of Appeals held that

backdating an agreement raised an inference the defendant was covering up its

tortious conduct. *David & Thomas v. Texaco, Inc.*, 2005 WL 2001937, at *7-8

(Cal. Ct. App. Aug. 19, 2005) (unpublished). There, defendant in a mass tort case

interfered with a contract between a law firm and co-counsel to obtain lower

settlements by paying fees directly to co-counsel and setting some fees aside in

escrow for the law firm. *Id*. at *5. Later, it backdated an amendment to the

agreement to make it appear it was escrowing the proper amount of fees. *Id*. The

backdating showed defendant was aware of the co-counsel agreement and that it backdated the amendment to cover up its tortious conduct. *Id*. at *7-8.  Likewise, retroactively terminating Foster's shows Mountain Coal knew it was retaliating against him and made his termination retroactive to cover it up.

The inference involved is analogous to that for consciousness of guilt.  "No one doubts that the state of mind which we call 'guilty consciousness' is perhaps the strongest evidence that the person is indeed the guilty doer...There are two process or inferences involved – from conduct to consciousness of guilt, and then from consciousness of guilt to the guilty deed." 2. J.Wigmore, Evidence in Trials at Common Law § 273(1) at 115, § 173 at 1840 (J Chadbourn rev. 1979).  The retroactive termination and pretextual reasons for firing Foster show Mountain Coal's consciousness of its retaliation, which implies its knowledge of Foster's protected activity.  As in *Hennagir*, the entirety of the circumstances allows the inference that Mountain Coal knew of Foster's accommodation request before it fired him, which necessarily means his request was timely and made prior to his termination.  Therefore, summary judgment on this issue was improper.

## IV.   THE CIRCUMSTANTIAL EVIDENCE ESTABLISHES CAUSATION AND PRETEXT

### A.   Foster Has Demonstrated Causation for Purposes of the Prima Facie Case

The temporal proximity between Foster's protected conduct and his termination satisfies the causation standard for purposes of his prima facie case. Mountain Coal argues that the but-for cause standard of *Nassar* should be adopted for the ADA.  The Court need not decide the issue, however, because it would not alter the analysis of Foster's case.

The appellate courts to consider the issue have held that even under the but-for cause standard, close temporal proximity continues to establish causation under the prima facie case. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013); *Adams v. Montgomery*, 569 F. App'x 769, 772-73 (11th Cir. 2014) (unpublished).  "[T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the prima facie stage on summary judgment or at trial indirectly through temporal proximity." *Zann*, 737 F.3d at 845.  District Courts, even outside these circuits, have followed suit. *Taylor v. Peninsula Reg'l Med. Ctr.*, 3 F. Supp. 3d 462, 472 (D. Md. 2014); *Guessous v. Fairview Prop. Investments, LLC*, 2014 WL 7238993, at *14 (E.D. Va. Dec. 16, 2014)

(unpublished); *Brown v. Brennan*, 2015 WL 2452751, at *4 (D. S.C. May 21, 2015) (unpublished).

These decisions are logical. The prima facie case only requires "a de minimis showing." *Zann*, 737 F.3d at 844-845. And at the prima facie stage causation is considered without regard to the defendant's explanation for the termination, which is only considered at the pretext stage. In the absence of any explanation for the termination, close proximity between the protected activity and the adverse action allows an inference of causation.

Further, "'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 845. There can be more than one but-for cause of an injury or adverse action. *Id.* at fn5. The inference that the adverse action would not have occurred in the absence of the protected activity is permissible based on close proximity alone at the prima facie stage.

Even if this Court adopts but-for causation for ADA retaliation claims, and holds more than temporal proximity is required, it can also consider Foster's pretext evidence as establishing causation. *Wells v. Colorado Dep't of Transp.*, 325 F.3d 1205, 1217-18 (10th Cir. 2003). Evidence of pretext can be used to establish

causation in the prima facie case; the evidence need not be rationed between one stage or the other. *Id*.  Foster's pretext evidence coupled with temporal proximity establishes causation even under the stricter standard advocated by Mountain Coal, making summary judgment improper.

**B.    Mountain Coal Did Not Follow Previously Contemplated Lines Because Its Termination of Foster was for Different Reasons than His Suspension**

Mountain Coal gave different reasons for Foster's suspension than for his termination.  Foster was suspended because his return to work slip was from Dr. Funk, not the hospital where his neck injury was treated; and because Dr. Funk told Mountain Coal he had never seen Foster for his neck. Aplt. App. p.420-421 (p.109:9-p.111:2).  At this meeting no one discussed with Foster the allegedly missing February return to work slip. Aplt. App. p.421 (p.111:3-7, p.112:1-11).  As set forth in section I, Foster's testimony is sufficient to raise a question of fact on this issue.  Although Mountain Coal presents a memorandum giving a different version of the conversation, Foster's testimony raises a question of fact as to why he was suspended. *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1255-56 (10th Cir. 2001) (employee's testimony on his work performance created a question of fact despite contrary testimony of two managers).  Additionally, the memorandum

32

presented by Mountain Coal is inadmissible hearsay to which Foster objected. Aplt. App. p.276-277, p.364 fn6.

Mountain Coal, however, claimed to be firing Foster for lying about providing a return to work slip in February. Aplt. App. p.230; Aplt. App. p.1070-1071 (p.79:8-p.80:7, p.83:18-23); 1364-1365(p.55:20-p.56:3). The action taken was for an entirely different reason than the suspension. The suspension was for providing a return to work slip from a doctor Foster had not seen. The termination was for lying about providing a return to work slip.

In each case cited by Mountain Coal, the company continued with its contemplated action and for the same reason as the initial action or warning to the employee. For example, in *Nixon v. Denver*, the employer fired the plaintiff and then appealed panel rulings reversing this decision. 84 F.3d 1364, 1370-71 (10th Cir. 2015). After plaintiff engaged in protected activity, the employer continued its appeals. *Id*. There was no evidence plaintiff's protected activity "as opposed to the original reasons for his termination, motivated the [employer's] action." *Id*. Unlike *Nixon* and the other cases, Mountain Coal was not acting on the "original reasons," but had come up with new reasons to act against Foster, making these cases inapplicable.

Finally, these cases only apply when a plaintiff can point to no evidence but temporal proximity to support causation.  In such cases temporal proximity showing causation "is implausible absent additional evidence of motive." *Id*.  As noted above, Foster's pretext evidence also supports causation.  If the reason given for Foster's termination is not the real one, then it cannot have been a legitimate previously contemplated action.  Foster has presented "additional evidence," making these cases inapplicable and summary judgment improper.

### C.    Foster Presented Evidence that the Reason Given for His Termination is Pretextual, Creating a Question of Fact on Causation

The evidence supporting a plaintiff's prima facie case may also be used to show prextext and may be sufficient to establish pretext, although it is not "necessarily" enough in every case. *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1290, 1297 (10th Cir. 1997).  The plaintiff is not required to ration the evidence between the stages. *Wells v. Colorado Dep't of Transp.*, 325 F.3d 1205, 1217-18 (10th Cir. 2003).

### 1.    Foster preserved all his arguments but one

Mountain Coal argues that Foster failed to preserve four arguments. Mountain Coal is correct that Foster failed to argue Mountain Coal never explained

why it was even concerned about the return to work slip.  But Foster preserved the other arguments.

Foster argued the suspicious circumstances surrounding his termination were evidence it was caused by his request for accommodation, although he did not use the words "suspicious circumstances."  He argued that "the totality of the circumstances allow the inference that Defendants wrote the termination letter in response to Foster's request for accommodation to Kunde."  Aplt. App. p.373. These circumstances included the retroactive termination. Aplt. App. p.373.

Olson's statement that Foster's neck injury would not be a workers' compensation issue is simply evidence of Mountain Coal's animus against injured and disabled employees, a preserved issue. Aplt. App. p.386-387, p.389.  Foster described Olson's comment in his statement of facts to the district court. Aplt. App. p.360 ¶10.

Although he did not use the word "harassment," Foster argued Mountain Coal's complaints about his obtaining the return to work slip from Dr. Funk, when it was Langrand who told Foster to see Dr. Funk, were evidence of pretext. Aplt. App. p.387-388.  This issue was preserved.  These three arguments may be considered by this Court.

### 2. In the light most favorable to Foster, the evidence demonstrates pretext

As set forth in the Opening Brief, there is evidence of pretext sufficient to warrant a trial. First, there are inconsistencies in the reason for Foster's termination. Foster's testimony establishes an inconsistency between the reason given for his suspension and the reason given for his termination. This casts doubt on the reason for his termination.

Further, Jensen's testimony establishes inconsistent reasons for Foster's termination. Jensen testified that Foster was terminated because his return to work slip did not have the right date on it. Aplt. App. p.513-514 (p.68:20-p.69:5). He clarified that this was because the slip should have been dated closer to his time off to be credible. Aplt. App. p.516-517 (p.71:15-25), p.519-520 (p.74:25-p.25:3). Later, in response to a series of leading questions from defense counsel, Jensen completely changed his story of why Foster was fired, saying it was because he lied about the earlier return to work slip. Aplt. App. p.562-564 (p.117:10-p.119:23). This is not an elaboration; it's a completely different reason. That Jensen's justification for terminating Foster is internally inconsistent, as well as inconsistent with other decision makers, only strengthens the inference of pretext.

Second, the close proximity between the protected activity and Foster's termination is some evidence of pretext. Although it is not enough alone, it adds to the circumstantial evidence showing pretext.

Third, the suspicious circumstances surrounding Foster's termination raise an inference of pretext. This includes all of the circumstances, particularly the retroactive termination. As discussed above, the retroactive termination shows Mountain Coal was attempting to hide its own wrongful conduct of retaliating against Foster.

Fourth, there is evidence of Mountain Coal's animus against the disabled. Foster's testimony established this animus, especially his testimony regarding the one-hundred percent healed policy. This is also supported by the memorandum at Aplt. App. p.1048-1059. Because this memorandum was produced by Mountain Coal, it is presumed authentic. *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 552-553 (D. Md. 2007). Mountain Coal attempts to dispute its animus at footnote 7. But its attempts are marred by the fact that Foster was forced out of the maintenance planner position and told he would be fired unless he got his restrictions lifted. Although Mountain Coal disputes this event, Foster's testimony must be accepted at true for purposes of summary judgment. Mountain Coal also harassed Foster for getting a return to work slip from Dr. Funk and not asking for

help, even though Foster asked Langrand for help and was told to see Dr. Funk. And it required him to go through the meaningless step of getting a Mountain Coal return to work form even though he previously produced a hospital return to work form.

Tenth Circuit precedent establishes that discriminatory animus is also evidence of a retaliatory motive. *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1258 (10th Cir. 2001); *Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1108 (10th Cir. 1998). Mountain Coal cites *Hysten v. Burlington N&S.F. R. Co.* as having a contrary holding. 44 F. App'x 411, 418 fn2 (10th Cir. 2002) (unpublished). But *O'Neal* and *Roberts* are published while *Hysten* is not. They are also the earlier cases, and therefore govern, because a later panel cannot overturn a prior panel. *Haynes v. Williams*, 88 F.3d 898, 900 fn4 (10th Cir. 1996).

Fifth, it can be inferred that Mountain Coal's reason for firing Foster was simply false. Foster testified he picked-up the return to work slip from Dr. Funk in February. Foster followed his, and others, usual practice of leaving it on White's – formerly Scanlon's – desk. Foster's length of service and history of missing work for injuries give him personal knowledge of the usual procedure for handling such forms – regardless of official policy – and that the procedure worked. Because Foster followed a procedure that had a history of working, it can be inferred that

Mountain Coal actually got the slip.  Mountain Coal's animus toward injured and disabled employees would explain why it denied receiving the slip.  Giving Foster the benefit of all favorable inferences allows the conclusion Mountain Coal fabricated its reason for firing Foster.  The evidence, taken as a whole and in the light most favorable to Foster allows the conclusion that Mountain Coal's reasons for terminating him were pretextual, making summary judgment on this issue improper.

## CONCLUSION

The district court erred in granting summary judgment.  Foster's April 3 request for accommodation was sufficiently direct and specific, because it informed Mountain Coal of his desire for assistance with his disability.  There is a reasonable inference that his April 11 request was timely.  The temporal proximity of these protected activities to Foster's termination, along with the evidence of pretext, establishes causation.  And there is evidence allowing a reasonable inference Mountain Coal's given reason for firing Foster was pretextual, including animus against the disabled, inconsistencies, and even that it was false.  For these reasons, Foster requests that this Court reverse the district court's summary judgment order and remand for further proceedings on Foster's retaliation and integrated enterprise claims.

Respectfully submitted this 25th day of June, 2015

/s/Damon Davis_____
Killian Davis Richter & Mayle, P.C.
Attorneys for Appellant Eugene Foster
202 North 7th Street
Grand Junction, CO 81501
970-241-0707
damon@killianlaw.com

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> This brief contains 6,982 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> This brief has been prepared in a proportionally spaced typeface using Microsoft Word version 14 in 14 point times new roman font

Date: June 25, 2014

> */s/Damon Davis*_____
> Killian Davis Richter & Mayle, P.C.
> Attorneys for Appellant Eugene Foster
> 202 North 7th Street
> Grand Junction, CO 81501
> 970-241-0707
> damon@killianlaw.com

**CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;
(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;
(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, {Malwarebytes Anti-Malware 1.75.0.1300 Database Version: V2014.05.01.02; Updated 4/30/2014}, and according to the program are free of viruses.


*/s/Damon Davis*_____
Damon Davis
Killian Davis Richter & Mayle, P.C.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2015, I electronically filed the foregoing using the court's CM/ECF system.

Jeffery Johnson (jjohnson@hollandhart.com)
Stephen Masciocchi (smasciocchi@hollandhart.com)
Bradford Williams (bjwilliams@hollandhart.com)




Date:  June 25, 2015

/s/Damon Davis_____
Damon Davis
Killian Davis Richter & Mayle, P.C.

Attorneys for Appellant Eugene Foster
202 North 7th Street
Grand Junction, CO 81501
damon@killianlaw.com
970-241-0707